Alice R. Plummer *vs.* Joseph P. Worthington *et al.*—
(Joseph P. Worthington *et al.* Appellees, *vs.* Joseph
Allen Sayre *et al.* Appellants.)

*Opinion filed April 23, 1926—Petition stricken June* 2, *1926.*

1. Deeds—*when deed provides condition subsequent.* A deed
providing for an annual payment by the grantee of a certain sum
to the grantor for his life and that upon failure to make such pay-
ment everything contained in the deed shall be null and void, cre-
ates a condition subsequent with a right of re-entry by the grantor
upon breach of the condition, although there is no express stipula-
tion for forfeiture and re-entry.

2. Same—*re-entry is necessary to determine grantee's estate on
breach of condition.* On breach of a condition subsequent, a re-
entry by the grantor, or some act equivalent thereto, is necessary
to determine the grantee's estate and re-vest the title in the grantor.

3. Same—*when right of forfeiture is waived.* The right of for-
feiture of a contract for breach of a condition subsequent may
be expressly waived by the party or by his conduct, and where a
deed is on condition of the prompt payment of a stipulated sum to
the grantor annually, the grantor waives the right to declare a for-
feiture where he accepts payments not made according to the ex-
press terms of the deed but made after they are past due.

4. Same—*notice of intention to renew right to forfeiture is nec-
essary after waiver.* Where the grantor's right to declare a for-
feiture for the grantee's failure to make prompt payment of an
annual sum is waived by acceptance of payments after they are
past due, he cannot, without specific notice to the grantee of his
intention, resume the right to declare such forfeiture for failure
to make future payments promptly.

5. Same—*demand for back payment indicates intention to waive
forfeiture.* As acceptance of a payment after it is past due is a
waiver of the right to declare a forfeiture for breach of a condi-
tion requiring payment by the grantee at a stipulated time, a de-
mand for payment of a sum which is past due is inconsistent with
a declaration of forfeiture and indicates rather an intention to
waive forfeiture.

6. Same—*heirs cannot revive right to forfeiture after waiver
by grantor.* Where a deed requires annual payments to the grantor
during his lifetime and the grantor has waived his right to declare
a forfeiture by acceptance of payments after they are past due
and has not thereafter given notice of an intention to insist on a

forfeiture, his heirs cannot revive the right thus waived by the grantor, nor can they, without notice, insist on a forfeiture because other payments were not made promptly when due.

7. PARTITION—*court may remove cloud from title of complainant not in possession.* Every person having an interest, who is not a petitioner, is required to be made a defendant to a partition suit, and as the suit is in the interest and for the benefit of all parties, the court having jurisdiction for the purpose of partition may proceed to settle all questions of conflicting or controverted titles, may remove a cloud from the title of complainants out of possession and set aside the title of occupants as a cloud on the title of such complainants.

8. SAME—*defendant may file cross-bill making other parties defendant.* As a suit for partition is in behalf of all the co-tenants, any one of them who is a defendant may file a cross-bill for the purpose of getting other and further relief as to the subject matter than the original bill asks for, and may make other persons who are not defendants to the original bill defendants to the cross-bill, whether interested as claimants of an adverse interest or otherwise.

9. SAME—*decree cannot be supported by evidence without sufficient allegations in pleadings.* Where the rights of the parties in a partition suit depend on the performance or non-performance of a condition subsequent in a deed but it cannot be ascertained from the allegations of an amended cross-bill, upon which the issues are sought to be raised, whether it was intended to allege actual performance or a waiver of performance, and no demurrer is filed but the cause is referred to the master and evidence taken as if the issues of performance and waiver were properly presented, the decree must be reversed on account of the insufficient allegations, as a decree cannot be based on evidence without allegations in the pleadings.

10. SAME—*when cross-complainants should be allowed to make an offer of performance of condition.* Cross-complainants whose rights in a partition suit depend upon performance of a condition subsequent in a deed to their ancestor requiring annual payment of a stipulated sum to the grantor for his lifetime, should be allowed, while the cause is before the master, to amend their cross-bill by inserting an offer to pay whatever sum the evidence shows to be due, where it is shown that the grantor had waived prompt payments in his lifetime by accepting payments after they were past due, as such offer, in seeking relief from forfeiture, is an offer to do equity.

APPEAL from the Circuit Court of Rock Island county; the Hon. NELS A. LARSON, Judge, presiding.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for appellants.

CONNELLY, WELD, WALKER & SEARLE, WALKER, SWEENEY & McNAMARA, and CAMERON & ANDERSON, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The question in this case is whether the ownership of a certain quarter-section of land in Rock Island county is in the heirs of Howard Worthington or in the heirs of Alanson L. Sayre. The circuit court of Rock Island county, upon a bill for partition, decreed in favor of the Worthington heirs, and the Sayre heirs have appealed.

The land formerly belonged to Alanson L. Sayre, and on February 4, 1889, he and his wife, Mary, conveyed the west half of the quarter-section to their daughter, Cyrilda Worthington, the wife of Howard Worthington, by a statutory warranty deed for an expressed consideration of one dollar. Following the description in the deed appears the following language: "To have and to hold the premises above described, with the appurtenances thereunto belonging, unto the party of the second part, her heirs forever. Provided, nevertheless, that the said party of the second part shall pay, or cause to be paid, to the parties of the first part the sum of $40 per annum during their natural lives. Now, if the above sum of $40 is not paid annually by the party of the second part, then everything herein contained shall be null and void." At the same time Sayre and his wife conveyed the east half of the quarter-section to their son, Perry W. Sayre, by a similar deed, containing the same words following the description. The grantees took possession of the land conveyed to them, respectively. Perry conveyed the east half of the quarter-section to Worthington on October 8, 1891, for a consideration of

$4500, his deed containing the same condition for the payment to Sayre and his wife of $40 annually during their natural lives. Cyrilda Worthington died on June 18, 1908, leaving no child or descendant but leaving a will devising all her property to her husband. The amount of money mentioned in the deeds accruing from their date to February 4, 1904, was paid by Perry W. Sayre, Howard Worthington and Cyrilda Worthington, but no payment, except two or three, was made during the year in which it was due. The payments, except those two or three, were all made after the expiration of the year from a few days to a few months, and the payments for the years 1896, 1897 and 1898 were all made together on March 1, 1899. Sayre's wife died on April 15, 1903, and on May 1, 1904, Worthington paid the amount due to the latter date. Worthington and his wife lived with Mr. and Mrs. Sayre on a forty-acre tract adjoining the quarter-section from the date of the deeds until Mrs. Sayre's death, and after her death Worthington and his wife and her father continued to live there together until 1905. In that year Worthington built a new house on the quarter-section which cost more than $3000, and he and his wife and her father moved into it. Later he built a barn at a cost of more than $2000, and a cattle barn and corn-crib. After the death of Mrs. Worthington Sayre continued to live with Worthington on the land for several months, and after that lived with some of his other children until his death, on December 9, 1912. Worthington leased the land to tenants in 1911 and 1912, and after the death of Sayre he leased it to Roy Long, who was the grandson of Sayre and one of his heirs, for one year ending March 1, 1914. Worthington died on January 31, 1916, and Long, who had continued in possession of the land as tenant from year to year, remained in possession thereof the next year. On December 19, 1916, Alice R. Plummer, a sister of Worthington and one of his heirs, filed a bill for partition against his other heirs and against Long as

tenant. Long on January 17, 1917, answered, denying that he was only a tenant of the premises and denying that the heirs of Worthington had any title to the premises. On February 17, 1917, the defendants, who were Worthington's heirs, answered and filed their cross-bill, averring Long's tenancy under Worthington, his holding over after Worthington's death and attornment to his heirs, and showing that the Sayre heirs were claiming title to the premises, disputing the title of the Worthington heirs and conniving with Long, who was also one of the Sayre heirs, to gain possession of the premises. The Sayre heirs were made defendants to the cross-bill, which prayed that the title to the land be adjudicated and determined. A receiver was appointed. The Sayre heirs answered, showing a conveyance of the quarter-section by Sayre and his wife, the conveyance by Perry W. Sayre to Worthington, the death of Cyrilda Worthington and the devise of all her property to her husband. Their answer alleged that the payments were not made by Cyrilda or Howard Worthington; that thereby the deeds became void, and after the death of Sayre and his wife the heirs of Sayre entered into possession of the premises and were the owners thereof in fee as such heirs. On October 25, 1917, the cross-complainants, by an amendment of their bill, denied the failure of Howard and Cyrilda Worthington to pay the annual sum of $40 during their lives to Alanson and Mary Sayre, alleging performance of the conditions, and that "Howard H. Worthington, and those through whom he claimed and traced his title to said lands, at all times kept, paid and performed each and every covenant and condition by him or them to be kept and performed to the entire satisfaction of the said Alanson L. Sayre and his wife, and neither he nor her ever at any time made or declared, or attempted to make or declare, any forfeiture or make an entry upon any of said lands, and waived any right of forfeiture, if any they ever had, which your orators deny." A replication was filed to the answer of the

Sayre heirs and issues were made on the bill and cross-bill. Long left the farm on February 26, 1917, and the same day his brother, Orin, and his uncle, Allen Sayre, went on the land and into the house with some blankets and bedding, cooking utensils and provisions. They stayed there that night. Nobody else was there, but on the next day the Worthingtons tried to enter and take possession, and some of them did effect an entrance to the house by breaking a window, and this condition remained, with some of the contestants on each side on the premises, until the appointment of a receiver, to whom the possession was surrendered.

The appellants' contention is that the language of the deeds of Alanson and Mary Sayre created a condition subsequent, of which there was a breach; that there was a re-entry, or its equivalent, by the Sayre heirs, which terminated the estate conveyed by the deeds; that Worthington forfeited his estate in his lifetime and so notified Sayre; that he did not die possessed of any estate and his heirs therefore took none; that Sayre's heirs had the same right to declare a forfeiture as Sayre himself; that under the pleadings the appellees' defense to the forfeiture was performance and not waiver.

The condition for the annual payment of $40 in each deed was clearly a condition subsequent. Whether or not it was also a covenant it is unnecessary to determine. The stipulation that upon failure to make an annual payment everything contained in the deed should be null and void was equivalent to an express stipulation for the forfeiture of the estate and a right of re-entry by the grantor. (*Sherman* v. *Town of Jefferson*, 274 Ill. 294.) A breach, also, was shown. Statements of Worthington that he had not made the annual payments and did not intend to do so were shown by a number of witnesses, and there was no evidence to the contrary. It is suggested that Sayre was indebted to Worthington for board and that Worthington had a right to set off this indebtedness against the payments

provided for in the deeds, and therefore, in fact, the condition had been performed. There is no evidence that Worthington ever made such claim. In view of the family relations, Worthington and his wife having lived in Sayre's family from the time of their marriage until they moved into Worthington's new house after Mrs. Sayre's death, no presumption of any indebtedness between them can be indulged.

Although there was a condition subsequent and a breach of it, the estate of Worthington was not determined by the breach. In such a case an entry, or some act equivalent thereto, is necessary to re-vest the estate in the grantor. (*Mott* v. *Danville Seminary,* 129 Ill. 403; *Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 id. 194; *Hart* v. *Lake,* 273 id. 60; *McElvain* v. *Dorris,* 298 id. 377; *Village of Peoria Heights* v. *Keithley,* 299 id. 427.) There was evidence that Sayre at various times demanded payment of Worthington and that Worthington refused, but no action was ever taken by Sayre for forfeiture of the estate.

The appellees insist that Sayre waived his right to declare a forfeiture of the estate. Each deed required the payment of $40 for the described eighty-acre tract annually, and provided that if it was not paid annually then the deed should be null and void. The deed was dated February 4, and the annual payments were therefore due on February 4. No such payment was made on or before February 4 in any year, except two or three. Therefore a right to declare a forfeiture arose within a year or two after the deed was made, but no forfeiture was declared by Sayre and no entry made. On the contrary, in the succeeding years payments were made a few days after February 4,—sometimes a few months after, sometimes more than a year after,—and were received. The right of forfeiture of a contract for a breach of a condition subsequent may be waived expressly by the party or by his conduct, and it is waived where the condition is for the prompt payment of money at a fixed

time, where payments have not been made according to the terms of the contract but have been made after they became due and accepted by the party to whom they were payable. (*Monson* v. *Bragdon,* 159 Ill. 61.) That case was a suit for specific performance of a contract and to enjoin an action of forcible entry and detainer. The contract provided that in case of failure to make any payment or any part of the payment or perform any of the covenants to be performed by the vendee, the contract should, at the option of the vendor, be forfeited and the vendee should forfeit all payments made by him on the contract and the vendor should have the right to re-enter and take possession of the premises, and it was mutually agreed that the time of payment should be of the essence of the contract. The vendor had accepted payments from time to time not made in conformity with the contract, but afterward, without any notice to the vendee, he declared a forfeiture and brought suit for the possession of the premises. The court held that the forfeiture was void and of no effect upon the rights of the parties. In *Watson* v. *White,* 152 Ill. 364, (a case upon a similar contract,) it was said that an agreement that time should be of the essence of the contract may be waived or set aside either by mutual consent or conduct of the parties or by the consent or conduct of the party in whose favor and for whose benefit the stipulation is made. The same rule is laid down in a great many cases, among which are *Palmer* v. *Ford,* 70 Ill. 369; *Eaton* v. *Schneider,* 185 id. 508; *Kissack* v. *Bourke,* 224 id. 352; *Marshall* v. *Keach,* 227 id. 35; *Jones & Dommersnas Co.* v. *Crary,* 234 id. 26; *Smith* v. *Treat,* id. 552.

Sayre's conduct was not necessarily an absolute, permanent waiver of his right to declare a forfeiture, yet in a court of equity it was such a temporary suspension of the right that it could be resumed only by giving definite and specific notice to that effect. (*Watson* v. *White, supra; Monson* v. *Bragdon, supra; Eaton* v. *Schneider, supra.*)

The grantor by his conduct from the beginning in accepting payments when offered at the convenience of the grantee after they were past due waived the right to declare a forfeiture for a failure to make prompt payment, and he could resume the right only on specific notice to the grantee of his intention to do so. He demanded payment but he did not undertake to declare a forfeiture or make an entry on the land. A demand of payment of a sum which was past due was not evidence of a forfeiture but rather of a waiver. The acceptance of payment would have prevented the forfeiture, and the request of payment was therefore inconsistent with a forfeiture and indicated an intention not to insist on a forfeiture. He died leaving the estate still vested and unforfeited in Worthington. His heirs were in no better position than he was. Since he had waived the forfeiture, as he had a right to do, they could not revive the right and declare a forfeiture upon a ground which he had waived and their attempt to do so was ineffectual.

A waiver of the time of payment was not a permanent waiver of the right to declare a forfeiture but only a temporary suspension of the right. It did not waive the payment of the money but only promptness of payment. The right of forfeiture could not, however, be exercised after such waiver without previously giving definite and specific notice of the intention to declare a forfeiture. The grantor having died without giving such notice, the right of his heirs to declare a forfeiture was subject to the same requirement that it could be exercised only after giving definite and specific notice. No such notice was given but the Sayre heirs proceeded as if the fee in Worthington had already been terminated, and without giving notice that the estate would be forfeited if the unpaid amounts were not paid within a reasonable time they proceeded without authority of law to take possession of the land.

The appellants argue that the cross-bill is not germane to the original bill and is wholly destitute of equity because

it seeks a construction of deeds as to legal titles, only, seeks to remove a cloud from the title of property of which the complainants are not in possession, and does not seek any relief against any of the parties to the original bill. There was no demurrer to the cross-bill for these reasons or any other. Section 39 of the Partition act provides that in all suits for the partition of real estate the court may investigate and determine all questions of conflicting or controverted titles and remove clouds upon the title as to any of the premises sought to be partitioned. Every person having an interest who is not a petitioner is required to be made a defendant to the suit, and the suit is in the interest and for the benefit of them all. (*Iberg* v. *Webb*, 96 Ill. 415.) The court having jurisdiction for the purposes of partition may proceed to settle all questions of conflicting or controverted titles, may remove the cloud upon the title of complainants out of possession and set aside the title of the occupant as a cloud on the title of the complainants out of possession. (*Mott* v. *Danville Seminary, supra; Trainor* v. *Greenough*, 145 Ill. 543; *Gage* v. *Chicago Title and Trust Co.* 303 id. 569.) The suit being in behalf of all the co-tenants, any one of them who is a defendant may file a cross-bill for the purpose of getting other and further relief as to the subject matter than the original bill asks for, and may make other persons who are not defendants to the original bill defendants to the cross-bill whether interested as claimants of an adverse interest or otherwise.

The appellants contend that the defense of waiver was not presented by the pleadings but that the defense which was presented was performance of the condition. The original bill was merely a bill for partition, saying nothing about the interest claimed by the Sayre heirs, none of whom were made parties except Roy Long, and he not as an heir but as a tenant. His answer, when filed, denied the title of the Worthington heirs, and the Worthington heirs, who were defendants, having answered, filed a cross-bill

alleging that the Sayre heirs claimed some adverse right in the premises the nature of which was unknown to the cross-complainants, but that they had no right or interest in the premises. The Sayre heirs answered the cross-bill setting out their claim of title under the deeds, the breach of the condition and consequent forfeiture of the estate. Thereupon the cross-complainants amended their cross-bill denying the breach of the condition alleged in the answer, and alleging, in the manner which has been stated, that Worthington had performed the condition to the entire satisfaction of Sayre and his wife, and that they had not at any time made or declared, or attempted to make or declare, any forfeiture or made an entry upon any of the lands, and had waived any right of forfeiture, if any they ever had. The amendment of the cross-bill was the proper method of taking issue on the allegation in the answer of a breach of the condition and of pleading new matter in avoidance of the breach. The allegations on these matters are, however, subject to the objection that instead of alleging the facts which show performance of the condition or the waiver of it, they merely set out the pleaders' conclusion. The general allegations of the amendment to the cross-bill furnished the defendants with no information as to what covenants and conditions Worthington had kept, paid and performed or as to how he had performed them or when, and the allegation is not an allegation of performance but an allegation of performance to the entire satisfaction of Sayre and his wife. It cannot be known whether it was intended by the bill to allege an actual performance of the condition, or something else in lieu of actual performance which was satisfactory to Sayre and his wife and constituted a waiver of performance. The allegation in regard to waiver does not state any act or series of acts constituting waiver or circumstances showing waiver, and the allegations were not such as to justify the receipt, over objection, of evidence on these questions. The defendants not having demurred or made

any objection to the amended cross-bill but having replied to it, the cause was referred to the master and evidence was taken and a decree rendered without any further amendment of the bill as if the issues of performance and waiver were properly presented. A decree, however, based on evidence without allegations can no more be sustained than a decree based on allegations without evidence, and for the reason of the insufficient allegations of the amended cross-bill the decree must be reversed, and upon a further hearing the cross-complainants should be permitted to amend the allegations of the cross-bill as to performance of the condition or the waiver of it, if they desire to do so.

While the cause was pending before the master the cross-complainants asked leave to amend the cross-bill by inserting an offer, if the evidence taken or to be taken by the master should fail to show full payment or discharge of all annual rentals of eighty dollars provided for in said deeds, that they stand ready and willing and offer to pay any deficiency which the court should find according to equity and good conscience, but the court, on objection by the defendants, denied the motion. No cross-error was assigned on this motion, but as the question will arise on remandment to the circuit court, we deem it proper to say that leave to make the amendment, if the motion is renewed, should be granted. The performance of the condition, so far as it has not been performed, was not waived by the mere waiver of prompt payment at the time, and the offer proposed to be made by the cross-complainants in seeking to be relieved from the forfeiture is an offer to do equity, which they should be allowed to make.

The decree is reversed and the cause is remanded to the circuit court for a further hearing, with directions to allow the appellees to amend the cross-bill if they make a motion for that purpose.

*Reversed and remanded, with directions.*